IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DMITRII TROPSKII | : |
| *Plaintiff* | : |
| v. | : CIVIL NO. 25-3226 |
| PAMELA BONDI et al | : |
| *Defendants.* | : |

**MEMORANDUM**

Petitioner, Dmitrii Tropskii, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. Section 2241. For the reasons that follow, Mr. Tropskii's Petition is granted, and his immediate release is ordered.

**I.    FACTUAL BACKGROUND**

   **a.  Dmitrii Tropskii Fled Russia as a Dissident.**

Dmitrii Tropskii is 48 years old and was born in Sochi, Russia (Soviet Union at the time of birth). ECF No. 1 at 17 [hereinafter Pet.]. Mr. Tropskii is an activist against the Russian government and its policies. ECF No. 18 at 1 [hereinafter Pet'r's Reply]. In 2011, Mr. Tropskii attended a rally organized by Alexei Navalny "in support of free parliamentary elections," and he became more involved with Mr. Navalny's advocacy in 2017. *Id*. at 1-2. Aleksandr Runov worked with Mr. Tropskii to promote fair state parliament elections and attested to Mr. Tropskii's advocacy. ECF No. 1-1 at 42 [hereinafter Pet'r's Ex.]. In 2022, Mr. Tropskii held a single-person protest against the Russian-Ukraine war. Pet'r's Reply at 2. He was arrested and labeled a dissident. *Id*. He received visits from the anti-terrorism police unit and warned to cease his activism. *Id*. The same police unit also visited his mother to intimidate Mr. Tropskii. *Id*.

Fearing retaliation, Mr. Tropskii fled Russia to Mexico, where he applied for political

1

asylum in the United States on September 7, 2023 at the Port of Entry in San Ysidro, California. Pet. at 17; ECF No. 10-1 at 2. Mr. Tropskii contends that he was immediately taken into custody upon arriving in the United States and then transferred to the custody of the United States Immigration and Customs Enforcement ("ICE") on September 14, 2023. Pet'r's Reply at 2; ECF No. 23 at 37-39 [hereinafter Hearing Transcript].

### b. Mr. Tropskii Seeks Relief from Removal.

On January 8, 2024, the U.S. Department of Homeland Security served Mr. Tropskii with a Notice to Appear before an immigration judge. Pet. at 17; ECF No. 10 at 3 [hereinafter Gov't Resp.]. On January 30, 2024, Mr. Tropskii appeared before an immigration judge, who sustained a charge of removability pursuant to 8 U.S.C. Section 1182(a)(7)(A)(i)(I). ECF No. 10-1 at 3. Consequently, Mr. Tropskii sought relief from removal. *Id.* He requested that the immigration judge grant him asylum, withholding of removal, and protection under the Convention Against Torture, but his requests were denied on May 20, 2024. *Id.* He filed an appeal with the Board of Immigration Appeals, which sustained the immigration judge's decision. ECF No. 10-2. Mr. Tropskii sought further review on October 22, 2024, from the United States Court of Appeals for the Fifth Circuit (Case No. 24-60548). That appeal is still pending. The Fifth Circuit stayed Mr. Tropskii's removal, pending the determination of his appeal. Pet'r's Ex. at 11-12.

ICE has continued to detain Mr. Tropskii during the pendency of his appeal under 8 U.S.C. Section 1226(c). ECF No. 10-4; Gov't Resp. at 9; Pet'r's Reply at 10. As a result, Mr. Tropskii filed (i) a petition for writ of habeas corpus and (ii) requests for a preliminary injunction and a temporary restraining order, alleging violations of 8 U.S.C. Section 1231(a)(6) and his Fifth Amendment Due Process rights under the U.S. Constitution. Pet. at 19-20.

### c. Prison-Like Conditions at the Detention Facilities.

In total, Mr. Tropskii has been in custody for about 25 months. He was initially sent to the Winn Correctional Center in Louisiana around September 14, 2024, then Pike County Correctional Facility in Pennsylvania on November 9, 2024, then the Federal Detention Center Philadelphia ("FDC") on February 13, 2025, then Moshannon Valley Processing Center on July 29, 2025—one day after the Government filed its response in opposition in this case. *Id.* at 2-3.

While at the FDC and now presently in Moshannon, Mr. Tropskii is unable to move freely, cook his meals, or have unfettered access to communication. Detainees are held in custody with two, sometimes three, people per cell. There have been multiple lockdowns, with Mr. Tropskii locked in his cell for as long as three to four days. Pet'r's Ex. at 16-17. Mr. Tropskii writes in his affidavit that they were rarely allowed access to the shower during lockdowns. *Id.* Moreover, Mr. Tropskii complained of a cold cell during the winter months and inadequate medical treatment of his pneumonia. *Id.* Mr. Tropskii explained that his pneumonia arose from occupying a corner cell while at Pike County Correctional Facility. *Id.* Mr. Tropskii's neighbor in detention, Kakhaber Kakhniashvili, confirmed that Mr. Tropskii complained to facility administration of his cold cell and illness, but to no avail. Pet'r's Ex. at 18-19.

### d. ACLU Complaint on Conditions at Moshannon.

The Court may take judicial notice of the publicly available July 10, 2024 complaint submitted by the American Civil Liberties Union of Pennsylvania and others to the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties ("CRCL") regarding Moshannon. FED. R. EVID. 201(b)(2); Am. Civil Liberties Union of Pa. et al., *Complaint to the U.S. Dep't of Homeland Sec., Office for Civil Rights & Civil Liberties: Egregious and Unconstitutional Conditions of Confinement at the Moshannon Valley Processing Ctr.* (July 10,

2024) [hereinafter ACLU Complaint].

According to the ACLU Complaint, conditions at Moshannon were marked by systemic deficiencies in safety, health care, and communication. Federal oversight agencies—the Department of Homeland Security's Office of the Immigration Detention Ombudsman ("OIDO") and CRCL—documented chronic understaffing, inadequate emergency preparedness, and widespread failure to provide interpretation services, noting a high number of use-of-force incidents and sexual-assault allegations. *See* ACLU Complaint at 6–7 (citing U.S. Dep't of Homeland Sec., Off. of the Immigration Detention Ombudsman, *Inspection Report: Moshannon Valley Processing Center* (2022) at 4); *see also* U.S. Dep't of Homeland Sec., Off. for Civil Rights & Civil Liberties, *Summary of CRCL's Recommendations and ICE's Response: Moshannon Valley Processing Center* (June 23, 2023).

The ACLU Complaint further alleges that detainees with limited English proficiency were denied interpretation and translation services, received disciplinary sanctions they could not understand, and were punished for failing to comply with English-only instructions. ACLU Complaint at 16-19. Individuals seeking medical or mental-health care allegedly faced long delays or outright refusals, and those who filed grievances or sought care were placed in solitary confinement or "protective custody" as retaliation. *Id.* at 2-3, 19-21, 35-43. Several detainees also described physical abuse, sexual humiliation during searches, and racially disparate treatment by staff, particularly against Black, Asian, and non-English-speaking detainees. *Id.* at 21–22, 52.

Taken together, the official government findings and the detainee accounts summarized in the ACLU Complaint depict a facility characterized by deficient medical care, pervasive language barriers, retaliatory discipline, and a climate of fear. As recently as August 5, 2025, one detainee named Chaofeng Ge was found dead in the shower room hanging by the neck, in what appears to

be a suicide. U.S. Immigration & Customs Enforcement, *ICE Detainee Passes Away at Pennsylvania's Moshannon Valley Processing Center* (Aug. 6, 2025), https://www.ice.gov/news/releases/ice-detainee-passes-away-pennsylvanias-moshannon-valley-processing-center. These conditions form the backdrop against which Mr. Tropskii's confinement at Moshannon must be understood.

## II. STANDARD OF REVIEW

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## III. DISCUSSION

28 U.S.C. Section 2241 provides authority for federal courts to hear habeas corpus claims by noncitizens challenging the legality or constitutionality of their detention by ICE. *Demore v. Kim*, 538 U.S. 510 (2003); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020). In this case, Mr. Tropskii's challenge to his detention depends on the Fifth Amendment's Due Process Clause, providing that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Due Process Clause applies to noncitizens in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

### a. Mr. Tropskii's Writ of Habeas Corpus is Granted for Violation of His Fifth Amendment Rights.

The Third Circuit has ruled that noncitizens detained pending removal proceedings pursuant to 8 U.S.C. Section 1226(c) may bring as-applied constitutional challenges to their detention. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208-10 (3d Cir. 2020). Whether a petitioner's detention is reasonable under the Fifth Amendment is a "highly

fact-specific inquiry." *Id*. at 210 (internal quotations omitted).  Reasonableness is determined using four non-exhaustive factors: (l) duration of detention; (2) whether detention is likely to continue; (3) reasons for delay; and (4) whether a detainee's conditions of confinement are meaningfully different from criminal punishment. *Id*. at 211.

### i. Duration of Detention.

The duration of Mr. Tropskii's detention is the weightiest factor. *Id*.  In total, Mr. Tropskii has been detained for about 25 months in three different facilities.  Neither party could cite to another district court case with a longer detention time than Mr. Tropskii's.  Hearing Transcript at 14-15.  Counsel for the Government conceded this factor weighs in Mr. Tropskii's favor. *Id*. at 39.  Under the circumstances, this Court finds Mr. Tropskii's detention weighs strongly in favor of granting relief.  *See Akhmadjanov v. Oddo*, 2025 WL 660663, at *4 (W.D. Pa. February 28, 2025) (finding 17 months of detention unreasonable); *see also Nunez v. Oddo*, No. 25-CV-143J, 2025 WL 2443437, at *4 (W.D. Pa. Aug. 25, 2025) (finding 14 months of detention unreasonable).

### ii. Whether Detention is Likely to Continue.

If a noncitizen's removal proceedings are unlikely to end soon, then continued detention is more likely to be unreasonable. *German Santos*, 965 F.3d at 211.  Mr. Tropskii is currently awaiting the Fifth Circuit's ruling on his appeal of the immigration judge's denial of his asylum request.  The Fifth Circuit placed an administrative stay on Mr. Tropskii's removal until his appeal is decided.  As of July 31, 2025, the briefing became ripe in that appeal.  The timing of an adjudication by an appellate court is uncertain.  Therefore, this factor is neutral.

### iii. Reasons for Delay.

The specific reasons for delay, such as a petitioner's request for continuances or bad faith tactics, weigh against issuing a writ. *German Santos*, 965 F.3d at 211.  In the underlying appeal,

both parties filed requests for modest extensions. And although Mr. Tropskii's appeal lengthened his proceedings and detention, his decision to appeal cannot be used against him as a punishment for "pursuing applicable legal remedies." *Id*. Therefore, this factor is neutral.

### iv. Conditions of Confinement.

Last, this Court assesses whether Mr. Tropskii's conditions of confinement are meaningfully different than criminal punishment. *German Santos*, 965 F.3d at 211. Removal proceedings are civil. If a noncitizen's detention more closely resembles criminal detention, then that leans in favor of granting relief.

At the time of Mr. Tropskii filing his petition, he was confined at the FDC. Now he is confined at Moshannon. The Court will consider the conditions of confinement at both facilities. *See Grigoryan v. Jamison*, No. CV 25-1389, 2025 WL 1257693, at *4 (E.D. Pa. Apr. 30, 2025) (considering conditions at both FDC and Moshannon because ICE transferred petitioner after he filed his petition). Mr. Tropskii complained of the following conditions at FDC: (i) lockdowns lasting multiple days; (ii) restricted access to warm or potable water, showers, and private toilets; (iii) deficient heating in his cell during winter months, causing Mr. Tropskii to "steal the second blanket and sheet after a detainee" left FDC and to cover himself with any items he could find, including towels; (iv) inadequate treatment of Mr. Tropskii's pneumonia, failure to respond to his sick call requests, and failure to timely provide him medication; (v) access to only a typewriter for legal work with the added burden of purchasing "type ribbon, correctional tape, etc. in commissary"; and (vi) delayed access to property and legal documents. ECF No. 18-1 at 2-6.

Mr. Tropskii noted that the only differences in confinement conditions between the immigration detainees and the pretrial detainees were that immigration detainees had a hotline for ICE-related inquires, three computers with Lexis Nexis (though no software capabilities to work

with text documents), and rubber slippers.  These conditions of confinement are not meaningfully different.

The Government argues that because FDC immigration detainees were housed separately from convicted prisoners in the "3-North" unit, that distinguishes Mr. Tropskii's conditions of confinement.  Gov't Resp. at 13-14; ECF No. 10-3 at 3 [hereinafter Cavallaro Decl.].  However, that argument on its own does not answer the relevant question of whether Mr. Tropskii's confinement conditions at FDC were meaningfully different than criminal punishment.  The Government failed to rebut that Mr. Tropskii's access to common areas, to social calls and non-monitored calls with counsel, and to "rubber slippers (a privilege not provided to criminal detainees) that are suitable for daily use as well as while showering" at FDC were not meaningfully different from the conditions of those in penal confinement.  Gov't Resp. at 13-14; Cavallaro Decl. at 3-4.  Mr. Tropskii maintains that these supposed privileges are the exact same conditions for those with criminal convictions.  Pet'r's Reply at 17.

The Government also did not distinguish the conditions at Moshannon from penal confinement.  Moshannon is a detention facility housing both convicts and non-convicts awaiting removal.  The Government's "understanding is that [detainees are] able to have more recreational time, more time to walk around the facility."  Hearing Transcript at 47.  These conclusions are not sufficient to establish a distinction.  The Government followed up with additional information: (i) a total of 456 detainees are held per housing unit; (ii) the housing units have several showers and washbasins, (iii) the common area has tables, chairs, televisions, telephones, and electronic tablets; and (iv) detainees get four hours of outdoor recreation per day.  Again, the Government did not distinguish how these conditions differ from those in confinement for crimes.  The ACLU Complaint further undercuts the Government's argument that conditions at Moshannon are not

like penal detention facilities.

Therefore, this last factor, as well as factor one, weigh in favor of granting habeas relief.

**b. Immediate Release is the Appropriate Remedy.**

This Court grants Mr. Tropskii's habeas petition for immediate release. The decision in *German Santos* does not preclude granting such relief, and the Court finds that Mr. Tropskii is entitled to immediate release. In addition, it is unclear from the record whether Mr. Tropskii's detainment is valid under 28 U.S.C. Section 1226(c). However, even assuming the detention is lawful, Mr. Tropskii's case is distinguishable from those in which only a bond hearing was granted, which the Government posits is the only remedy available if habeas relief is granted. Notably, Mr. Tropskii has not been convicted of any crimes, and in light of this, immediate release is the appropriate remedy.

### i. *German Santos* Does Not Foreclose Relief in the Form of Immediate Release.

In *German Santos*, a native of the Dominican Republic pleaded guilty to possession of marijuana with intent to deliver. *German Santos*, 965 F.3d at 206. He was detained under 8 U.S.C. Section 1226(c) while awaiting a decision on his removal proceedings. *Id*. An immigration judge ordered German Santos removed, and he timely appealed that decision. Separately, German Santos filed a habeas petition under 28 U.S.C. Section 2241, arguing he was entitled to a bond hearing under Third Circuit prior precedents, *Diop v. ICE/Homeland Sec* and *Chavez-Alvarez v. Warden York Cty. Prison*. 656 F.3d 221 (3d Cir. 2011); 783 F.3d 469 (3d Cir. 2015). The Court granted German Santos's petition and ordered a bond hearing. *German Santos*, 965 F.3d at 214.

In neither *Diop*, *Chavez-Alvarez*, nor *German Santos* did the Third Circuit affirmatively proscribe immediate release as a remedy. Nor did the petitioners in these cases seek immediate release as a remedy, unlike Mr. Tropskii. In *Diop*, the petitioner argued that detention for an

9

unreasonable period without a hearing is not justified. *Diop*, 656 F.3d at 225, 231. The *Diop* Court wrote that "when detention becomes unreasonable, the Due Process Clause demands a hearing." *Id*. at 233 (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003) (Kennedy, J., concurring)). Similarly, the *Chavez-Alvarez* Court granted the detainee's habeas petition and request for a bond hearing. *Chavez-Alvarez*, 783 F.3d at 470-71, 478. In both these cases, the Third Circuit found that Section 1226(c) implicitly authorizes detention for only a reasonable amount of time before a bond hearing must take place. *Diop*, 656 F.3d at 235; *Chavez-Alvarez*, 783 F.3d at 478. But as *Jennings v. Rodriguez* and *German Santos* made clear, Section 1226(c) does not contain an implicit time limit on detention; rather, ICE detainees must bring an as-applied challenge under the Fifth Amendment for unreasonable detention. 583 U.S. 281, 303-04 (2018); *German Santos*, 965 F.3d at 210.

But nowhere in these opinions did the Third Circuit preclude immediate release as a remedy. In fact, the Third Circuit in *Hope v. Warden York Cnty. Prison* held that detainees—some of which were detained pursuant to Section 1226(c)—may file a habeas petition pursuant to 28 U.S.C. Section 2241 to challenge unconstitutional conditions of confinement. 972 F.3d 310, 318, 323, 325 (3d Cir. 2020) ("The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention."). The Court overturned the district court's order granting immediate release on grounds that it contravened Rule 65 and failed to consider pertinent facts and arguments. *Id*. at 322, 325-31. The Court did not overturn on the basis that immediate release of a noncitizen detained under Section 1226(c) cannot be ordered.

The Government in this case gave a tepid counter to *Hope* that it is inapplicable to Section 1226(c). Hearing Transcript at 36-37. But the Government fails to address the absence in *Hope* of a holding that detainees—some of which were in custody pursuant to Section 1226(c)—cannot

be granted immediate release. Therefore, under current existing Third Circuit precedent, immediate release is still an available remedy when granting a Section 1226(c) detainee's habeas petition.

District courts have taken different approaches to this question. *See Grigoryan v. Jamison*, No. CV 25-1389, 2025 WL 1257693, at *2 n.2 (E.D. Pa. Apr. 30, 2025) ("The Court doubts that it has the authority to issue such a preliminary injunction given that the underlying habeas petition only seeks a bond hearing."); *Pedro O. v. Garland*, 543 F. Supp. 3d 733, 752 (D. Minn. 2021) ("Although the Court does not suggest that an order for immediate release could never be the appropriate habeas remedy for unconstitutionally prolonged detention under § 1226(c), such a remedy is not required in this case."); *Saint Jacques v. Dep't of Homeland Sec.*, No. 1:21-CV-1144, 2021 WL 4494623, at *2 (M.D. Pa. Sept. 30, 2021) ("At the outset, the Court notes that it cannot grant Saint Jacques' requested relief of immediate release from custody."); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022) ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *see e.g., Shonhai v. Lowe*, No. CV 3:24-229, 2025 WL 510975 (M.D. Pa. Feb. 14, 2025) and *Michelin v. Oddo*, No. 3:23-CV-22, 2023 WL 5044929 (W.D. Pa. Aug. 8, 2023) (both granting habeas relief for a bond hearing where petitioner also requested immediate release).

Although some district courts have not gone so far as to hold that they may never grant a detainee's habeas petition for immediate release under *German Santos*, none have apparently done so. However, the Government was unable to provide precedent explicitly preventing this Court from ordering Mr. Tropskii's immediate release. Hearing Transcript at 35. This Court recognizes its novel ruling in this context that Mr. Tropskii is entitled to immediate release, but novelty does

11

not make illegitimacy. And novel facts lead to different results. In these circumstances, Mr. Tropskii is entitled to immediate release rather than a bond hearing.

### ii. Ordering a Bond Hearing is Not Sufficient to Accord Mr. Tropskii His Due Process Rights.

The purpose of a bond hearing is to test the lawfulness of continued detention under Section 1226(c). But based on the Government's briefing, exhibits, and arguments at the September 24, 2025 hearing, this Court is not assured that Mr. Tropskii is correctly detained under Section 1226(c).

As stated above, Mr. Tropskii appeared before an immigration judge on January 30, 2024. The immigration judge took pleadings and "[Mr. Tropskii] admitted to all of the factual allegations, one through four, and based on those concessions to the allegations, the Court then sustained the charge of removability pursuant to INA § 212(a)(7)(A)(i)(I) by clear and convincing evidence." ECF No. 10-1 at 2-3. 28 U.S.C. Section 1226(c) permits detention under this subsection for detainees if they are "inadmissible" pursuant to 8 U.S.C. Section 1182(a)(7)(A)(i)(I)[1] (the U.S. code citation for the relevant INA section) *and* have been charged with, arrested for, convicted of, or admits having committed "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 28 U.S.C. § 1226(c)(1)(E). There is no factual evidence that Mr. Tropskii was ever involved in one of the enumerated crimes. When questioned by the Court, the Government could not even answer why exactly ICE had detained Mr. Tropskii and why he was found inadmissible. Hearing Transcript at 37-39. The Government stated, "in reviewing the

---

[1] "Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

12

paperwork and the discussion of it with ICE, and in the immigration judge's opinion, it just said he was found inadmissible and placed in removal proceedings." *Id*. at 38-39. And certainly, the Government never put forth evidence that Mr. Tropskii was charged with, arrested for, convicted of, or admits to having committed any crimes—a requirement for Section 1226(c)(1)(E) detainment when a noncitizen is found inadmissible pursuant to Section 1182(a)(7)(A)(i)(I).

Now, there are other grounds for detention under Section 1226(c), such as committing other crimes, terrorism-related offenses, or violations of travel controls under 8 U.S.C. Section 1185. *See* 8 U.S.C. § 1226(c). However, the record evidence provides no clarification as to what other grounds justify Mr. Tropskii's detention under Section 1226(c). The record evidence offered by the Government only demonstrates that Mr. Tropskii was found inadmissible pursuant to Section 1182(a)(7)(A)(i)(I), which, by itself, is insufficient to warrant detainment under Section 1226(c)(1)(E).

For that reason, a bond hearing determining whether Mr. Tropskii is a flight risk or danger to the community is not applicable. Limiting his relief to only a bond hearing based on an uncertain reading of *German Santos* would adjudge him guilty of a crime he was never charged with, arrested for, convicted of, or admits to having committed. ICE has not adequately justified why it detained Mr. Tropskii under Section 1226(c), a no-bond detention statute, when Congress never authorized such detention for noncitizens like Mr. Tropskii. Thus, the appropriate remedy is restoration of liberty, not a procedural cure that perpetuates a potentially unlawful detention.

Even if Mr. Tropskii is properly detained under Section 1226(c) and the *German Santos* framework still applies, Mr. Tropskii is due immediate release. His case differs from past Third Circuit and district court cases ordering a bond hearing because there is no evidence that Mr. Tropskii was convicted of a crime. *See e.g.*, *German Santos*, 965 F.3d at 206 ("[Petitioner] pleaded

guilty in Pennsylvania state court to possessing marijuana with intent to deliver it"); s*ee also Grigoryan*, 2025 WL 1257693, at *1 ("As a result of his crimes, he was deemed removable and held in mandatory detention under 8 U.S.C. § 1226(c) . . .".).  Absent evidence of a crime warranting an inquiry into Mr. Tropskii's flight risk or danger to the community, a bond hearing is not sufficient to accord Mr. Tropskii his Due Process rights.  *Hope* v, 972 F.3d at 325 ("[S]ubstantive due process proscribes punishment of non-prisoners.").  He has no prior criminal record, and numerous community members have vouched for his character and affirmed their financial support of Mr. Tropskii if he is released.  Pet'r's Ex. at 42-49.  His release is required.

### IV. CONCLUSION

The Court has granted Mr. Tropskii's writ on grounds that his Due Process Fifth Amendment rights were violated.  Therefore, the Court need not address Mr. Tropskii's requests for preliminary injunction and temporary restraining order.  An appropriate Order follows.

BY THE COURT:

**HONORABLE KAI N. SCOTT**
**United States District Court Judge**